EASTERN DISTRICT OF NEW YORK
----------------------------------------x
FRANZ MULLINGS,

              Petitioner,

    -against-

TIMOTHY LAFFIN, Superintendent of
Wallkill Correctional Facility,

              Respondent.
----------------------------------------x

**MEMORANDUM AND ORDER**

13-CV-139 (KAM)

      Franz Mullings, acting pro se, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Mullings seeks relief from his conviction in the New York Supreme Court, Kings County, for Criminal Possession of a Weapon in the Second Degree. (Pet. for Writ of Habeas Corpus ("Pet."), ECF No. 1.) For the reasons stated below, the court finds that the petition is procedurally barred and, in any event, meritless. Accordingly, the habeas petition is denied.

### BACKGROUND

      Mr. Mullings' conviction arises from a gang-related shooting on June 29th, 2003 at East 82nd Street and Avenue K in Brooklyn. (Resp't Aff. in Opp'n to Pet. ("Resp't Aff.") ¶ 5, ECF No. 8.) The shooting resulted in the death of Anthony Irving. *Id.* Christopher Dawkins, who witnessed the shooting, identified petitioner as the person who was handed a gun by co-defendant Stefan McIntosh and stated that Mullings fired the first shots at Irving. (*Id.*) On January 14, 2004, Mullings and

1

McIntosh were arrested and each charged with one count of Murder in the Second Degree, N.Y. Penal Law § 125.25(1), Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03(2) (1998), and Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02(4) (2000). (*Id.* ¶ 7.)

Trial in the case commenced on April 4, 2006. At trial, the prosecution presented the following witnesses: Bruce Middleton, the victim's grandfather, who identified the body of his grandson at the morgue (Trial Tr. 35-40, ECF Nos. 7-1 to 7-7); New York City Police Department ("NYPD") Officer Selena Hunt, who responded to the scene of the shooting and identified the victim (*id.* at 40-44); Dawkins (*id.* at 46-291); NYPD Detective Elizabeth Miller, the lead detective investigating Irving's death (*id.* at 308-338); NYPD Detective Edward Dingman (*id.* at 339-358); NYPD Detective Yvette Caraballo (*id.* at 361-401); Dr. Carolyn Kappen of the Office of the Chief Medical Examiner in New York City, who was certified as an expert in forensic pathology (*id.* at 403-435); and NYPD Detective Peter Liota, who was certified as an expert in ballistics (*id.* at 450-476.) The defense did not present a case.

Most relevant to the instant motion, Mr. Dawkins testified that he had known the petitioner for several years as a member of a rival gang. (*Id.* at 67-68.) He further testified that, on June 29, 2003, he witnessed defendant McIntosh hand

2

Mullings a handgun and then saw Mr. Mullings raise the gun. Subsequently, shots were fired, which hit the victim, Mr. Irving, in the upper torso. (*Id.* at 79, 81, 177; *see also id.* at 113-14 (discussing Dawkins' identification of petitioner in a lineup).) Mr. Dawkins believed the gun handed to Mr. Mullings to be a .9 millimeter firearm. (*Id.* at 80.) Detective Miller testified that four .9 millimeter shell casings were recovered at the scene. (*Id.* at 310).

The jury acquitted petitioner of the murder charge but found him guilty of Criminal Possession of a Weapon in the Second Degree, while co-defendant McIntosh was acquitted of all charges. (*Id.* at 821-22.) Mullings was subsequently sentenced to ten years' imprisonment and three years of post-release supervision. (Sentence Tr. 19, ECF No. 7-7, at 84.)

Mr. Mullings appealed his conviction to the Appellate Division, Second Judicial Department, contending that: (1) he was deprived of his right to a fair trial because the Assistant District Attorney made prejudicial comments in her summation, and the court committed reversible error by overruling the objections made to those comments (Appellant Br. 16-38, ECF No. 7-8); (2) he was deprived of his rights to due process and a fair trial by the cumulative effects of the court's pre- and post-trial rulings, including the court's admission of evidence regarding witness identification of Mullings, as well as the

3

court urging the jury to reach a verdict after the jury stated that it was deadlocked (*id.* at 38-50); (3) his sentence should be reduced or modified in the interest of justice (*id.* at 50-54). Additionally, in arguing that the trial court inappropriately pushed the jury to come to a verdict by providing a modified *Allen* charge,[1] appellate counsel briefly asserted that the respective verdicts as to Mullings and McIntosh were inconsistent, stating:

> The jury reached a verdict . . . acquitting both defendants of the murder and acquitting Mr. McIntosh of the weapons charges. However, Mr. Mullings was convicted of Possession of Weapon in the Second Degree (Note: This verdict really made very little sense in that it was the prosecution's theory that Mr. McIntosh possessed a weapon and . . . then handed it to Mr. Mullings who then allegedly shot the gun. The inconsistency of such a verdict is further evidence that the verdict was 'coerced' and is a further basis for reversal[)].

(*Id.* at 50.)

On October 4, 2011, the Appellate Division affirmed Mullings' conviction, holding that the comments in the prosecutor's summation were either fair or that challenges to those comments were not preserved for appellate review. *People v. Mullings*, 930 N.Y.S.2d 279, 279-80 (2d Dep't 2011). The court further held that "the trial court did not improvidently exercise its discretion in denying the defendant's request for a

---

[1] An *Allen* charge is a charge given to the jury after it indicates that it is deadlocked that encourages the jurors to continue deliberating. *See, e.g., Smalls v. Batista*, 191 F.3d 272, 278 (2d Cir. 1999) (citing *Allen v. United States*, 164 U.S. 492 (1896)).

4

mistrial" and that appellant's claim regarding jury coercion was both unpreserved and without merit. *Id.* at 280. Finally, the appellate court decided that the sentence imposed was not excessive. *Id.* Mullings' remaining contentions were deemed "unpreserved for appellate review and, in any event, . . . without merit." *Id.* Subsequently, the Court of Appeals denied the petitioner's leave to appeal without opinion on January 10th, 2012. *People v. Mullings*, 18 N.Y.3d 885 (2012). Mullings did not file any petitions, applications, or motions concerning this judgment of conviction, other than the direct appeals. (*See generally* Pet.)

On January 7, 2013, Mr. Mullings filed the instant petition for a writ of habeas corpus.[2] The petition raises a single ground for relief:

> I was convicted of Criminal Possession of a weapon in a case where there was no weapon. In a one witness case where the witness claims to know who my co-defendant and myself were since 1997, and that I had no weapon until my co-defendant retrieved one and handed it to me. My co-defendant Mr. Stefan McIntosh was acquitted of all charges. We had the same charges. Same trial. Based on his acquittal it is impossible for me to be convicted of criminal possession of a weapon.

---

[2] The instant petition was filed in a timely manner. Pursuant to 28 U.S.C. § 2244, a habeas corpus petition shall be filed within a one-year period of limitation, which runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The one-year period within which Mullings had to file a habeas petition began running on January 10, 2012, the date on which the New York Court of Appeals denied leave to appeal. Mullings' habeas petition was filed on January 7, 2013, falling within the one-year period of limitation.

5

(Pet. 6.) This claim may be liberally construed to contend that the jury reached a repugnant, or inconsistent, verdict or that there was insufficient evidence to support Mr. Mullings' conviction.

## DISCUSSION

### I. Standard of Review

Mr. Mullings is proceeding *pro se*, and the court must therefore construe his submissions liberally and interpret them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Ennis v. New York*, No. 06-CV-2965, 2012 WL 1940809, at *3 (E.D.N.Y. May 29, 2012) (interpreting a pro se petitioner's habeas claim to implicate a constitutional right, where the petitioner discussed his right to a fair trial, but not any specific constitutional provision). "[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" however. *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

This court's review of the instant habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). A state court's adjudication of a federal claim on the merits is reviewable by

this court only if it conflicts with "clearly established Federal law, as determined by the Supreme Court of the United States," or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.*

In addition, a habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Even if the exhaustion requirement is satisfied, federal habeas corpus review may be barred by the independent and adequate state law grounds doctrine, which provides that a federal court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The court will first address whether petitioner has exhausted state court remedies and the application of the independent and adequate state law grounds doctrine in this case, and then turn to the merits of petitioner's claims.

**II. Procedural Bar to Petitioner's Claims**

Under 28 U.S.C. § 2254, a district court may not grant a habeas petition made by "a person in custody pursuant to the judgment of a State court" unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

§ 2254(b)(1)(A). This rule is "grounded in our concerns for federalism and comity between the state and federal sovereigns . . . [and] ensures that federal courts respect the 'States' interest in correcting their own mistakes.'" *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (quoting *Coleman*, 501 F.3d at 732; other internal citation omitted). In order to meet the exhaustion requirement, the petitioner must have "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of New York*, 280 F.3d 87, 94 (2d. Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state." (internal quotation marks and citation omitted)).

"Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law." *Ramirez*, 280 F.3d at 94. Where a claim is exhausted but procedurally barred, a court may nonetheless review it if the petitioner shows "cause for the

default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748-50).

In petitioner's case, the Appellate Division did not have a fair opportunity to consider the federal claim Mr. Mullings presents in his habeas petition.[3] Specifically, as previously discussed, Mr. Mullings' appellate counsel did not raise either a claim that the jury's verdict was repugnant or that the verdict was based on insufficient evidence. Although appellate counsel alluded to the fact that the "verdict really made very little sense" in light of the prosecution's theory during trial (Appellant Br. 50), this brief mention of the verdict was not sufficient to "inform[] the state court of both the factual and legal premises of the claim [petitioner] asserts in federal court." *Daye v. Attorney Gen. of State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (holding that the petitioner must present "essentially the same legal doctrine" to the state court as to the federal). Instead, the contention regarding the verdict was made in the portion of the brief asserting that the

---

[3] The respondent has not provided the court with a copy of Mr. Mullings' application for leave to appeal to the New York Court of Appeals. This omission is, however, irrelevant to whether petitioner's claims are procedurally barred because "raising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Accordingly, any claim Mr. Mullings did not raise before the Appellate Division is procedurally barred.

9

trial judge had pressured the jury into reaching a verdict by giving an improper *Allen* charge. Accordingly, the Appellate Division did not have an opportunity to pass upon petitioner's claims regarding his verdict.

Although Mr. Mullings did not raise his federal claim in the Appellate Division, his claim is deemed exhausted and procedurally barred because he has no recourse in the state courts. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (foreclosing state collateral review where the grounds for review could have been but were not raised on direct appeal); N.Y. Ct. Rules § 500.20(a) (prohibiting appellants from filing more than one petition to the New York Court of Appeals). Accordingly, this court may not review petitioner's claim unless Mr. Mullings demonstrates cause for and prejudice as a result of his default, or that fundamental fairness compels the court to review his federal claim. There is no evidence in the record that there was cause for petitioner's default. Further, as will be discussed below, the court's finding that the claim is procedurally barred will not result in a miscarriage of justice because petitioner's claims are, in any event, without merit.

**III. Independent and Adequate State Law Grounds**

Even had appellate counsel raised the claim Mr. Mullings now brings in his habeas petition, the petition would be dismissed because the Appellate Division ruled that

10

petitioner's claims were unpreserved for appellate review. Specifically, the court found all of "defendant's remaining contentions [to be] unpreserved for appellate review and, in any event, . . . without merit." *Mullings*, 930 N.Y.S.2d at 280.

"Federal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). A state court's ruling that a claim is unpreserved for appellate review is an independent and adequate state law ground that results in a procedural bar to federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999); *see also Grant v. Bradt*, No. 10-CV-394, 2012 WL 3764548, at *4 (S.D.N.Y. Aug. 30, 2012) (holding that claims that the Appellate Division found were "unpreserved for appellate review, and, in any event, without merit" could not be reviewed by the federal court); *Smith v. Herbert*, 275 F. Supp. 2d 361, 366 (E.D.N.Y. 2003) (quoting *Glenn v. Barlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)) ("When a court says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved.").

Although a claim that is barred by the independent and adequate state law doctrine may be reviewed if a petitioner can show cause and prejudice, or that a fundamental miscarriage of justice will occur in the absence of review, *see Cotto v. Herbert*, 331 F.3d 217, 240 n.10 (2d Cir. 2003), for the reasons stated previously, Mr. Mullings does not meet that standard. Therefore, this court may not review the decision of the Appellate Division to affirm Mr. Mullings' conviction, and his claims are dismissed.

**IV. The Merits of Petitioner's Claims**

Even if this court were to set aside the question of procedural requirements, petitioner's claim, that the jury verdict was repugnant or not supported by sufficient evidence, is meritless and does not warrant habeas relief.

**a. Repugnant Jury Verdict Claim**

In his habeas petition, Mr. Mullings states that, "based on [co-defendant McIntosh's] acquittal, it is impossible for me to be convicted of Criminal Possession of a weapon." (Pet. 5.) The court understands Mr. Mullings to be claiming that the verdict in his case was repugnant, or inconsistent, with that of his co-defendant. *See People v. Tucker*, 55 N.Y.2d 1, 6 (1981) ("Whether verdicts are described as 'repugnant' or 'inconsistent' is substantively inconsequential . . . . The critical concern is that an individual not be convicted for a

crime on which the jury has actually found that the defendant did not commit an essential element").

"A purported inconsistency in a state court verdict is generally not a basis on which to grant habeas corpus relief," however. *Smith*, 275 F. Supp. 2d at 371 (collecting cases); *see also Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, and also with respect to verdicts that treat codefendants in a joint trial inconsistently" (internal citations omitted)); *Suarez v. Bennett*, 207 Fed. App'x 114, 116 (2d Cir. 2006) ("[W]e are not permitted to grant habeas [relief] simply because a jury's verdicts are inconsistent."). Thus, Mullings' claim that the jury verdict, finding him guilty of criminal possession of a weapon, is repugnant does not implicate a federal question and is not cognizable on habeas review.[4] Therefore, to the extent petitioner makes a claim based on his belief that the verdict was repugnant, habeas relief is denied.

---

[4] The court notes that it is not clear that Mr. Mullings and Mr. McIntosh's verdicts were in fact inconsistent. The jury may have believed eyewitness Dawkins' testimony that Mullings possessed a firearm with the intent to use it unlawfully but not Dawkins' testimony that McIntosh provided the firearm. *See Stewart v. New York*, No. 04-CV-4426, 2008 WL 2566379, at *4 (E.D.N.Y. June 26, 2008) (finding that "the mix of guilty and non-guilty verdicts [in the case was] easily consistent with the jurors' rejection of only part of the victim's testimony, rather than all of it, which they are free to do.").

13

### b. Insufficient Evidence Claim

Mr. Mullings' petition may also be interpreted as a claim that his verdict was not supported by sufficient evidence. On habeas review, the court's evaluation of whether evidence was sufficient to sustain a conviction is subject to a stringent standard of review. The conviction will be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after the evidence is viewed in the light most favorable to the prosecution. *Linton v. Bradt*, 775 F. Supp. 2d 574, 581 (E.D.N.Y. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997)). Indeed, "[e]ven when 'faced with a record of historical facts that supports conflicting inferences, [the court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Archer v. Fischer*, No. 05-CV-4990, 2009 WL 1011591, at *8 (E.D.N.Y. Apr. 13, 2009) (quoting *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994)). Stated differently, the court "must defer to the jury's 'assessments of the weight of the evidence and the credibility of witnesses.'" *Leveille v. Ercole*, No. 05-CV-5602, 2006 WL 3257233, at *4 (E.D.N.Y. Nov. 9,

2006) (quoting *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)).

In the instant case, viewing the evidence in the light most favorable to the prosecution, the verdict was supported by sufficient evidence. At the time petitioner was convicted, the offense of criminal possession of a weapon in the second degree required a showing that "with intent to use the [weapon] unlawfully against another . . . (2) [defendant] possesses a loaded firearm." N.Y. Penal Law § 265.03 (1998). Having heard testimony from Dawkins that the petitioner was handed a gun, pointed it, and fired, a rational trier of fact could conclude that Mullings was guilty beyond a reasonable doubt of criminal possession of a weapon in the second degree. Although petitioner's trial counsel raised questions about Dawkins' credibility throughout the trial (*see, e.g.,* Summation Tr. 4-33, ECF No. 7-5), the jury was entitled to determine that Dawkins was credible. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (holding, where petitioner's conviction was based solely on eyewitness identification, that questions regarding the credibility of those witnesses was not a basis for habeas relief). The court would, therefore, deny any sufficiency of the evidence claim by Mr. Mullings on the merits.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is denied because it is procedurally barred, and is, in any event, meritless. The Clerk of Court is respectfully requested to mail a copy of this Memorandum and Order to petitioner at the address listed on the docket sheet, enter judgment in favor of the respondent, and close the case.

As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003). Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

**Dated:** August 8, 2014
Brooklyn, New York

_____/s_____
**KIYO A. MATSUMOTO**
United States District Judge